## JEFFRIES v. LILLARD, U. S. Marshal.

Circuit Court of Appeals, Sixth Circuit.
June 30, 1928.

No. 4990.

1. Criminal law ⬅️242(4)—To show probable cause, indictment must intelligibly state substantial charge against respondent, whose removal is sought.

While court, to which appeal is taken from order remanding applicant for writ of habeas corpus to marshal for removal to another district to answer indictment there pending, cannot examine indictment from standpoint of court to which returned, when considering demurrer or motion against it, it must contain a substantial charge, intelligibly stated, against the particular respondent whose removal is sought, to show probable cause therefor.

2. Criminal law ⬅️242(4)—Indictment for using mails to defraud charged no offense against defendant, sought to be removed to another district, as respects letters mailed after his connection with partnership ceased (Cr. Code, § 215 [18 USCA § 338]).

Indictment for using mails to defraud, in violation of Criminal Code, § 215 (18 USCA § 338), held to charge no offense against respondent, sought to be removed to district wherein pending, so far as based on mailing of letters by alleged partners after his active connection with partnership ceased, in absence of explicit averment of such prior connection with scheme as to carry responsibility for later letters.

3. Criminal law ⬅️242(4)—Indictment for using mails to defraud held to indicate probable cause for removal of defendant, no longer connected with scheme (Cr. Code, § 215 [18 USCA § 338]).

Counts of indictment for using mails to defraud, in violation of Criminal Code, § 215 (18 USCA § 338), alleging that defendants intended to make statements of and pay to lessees of defendants' machines greater amounts than were earned thereby, so as to induce others to buy similar leases, and falsely represented that they would make profits from which to pay agreed royalties to later lessees, held to indicate probable cause for removal of defendant, whose active connection with scheme had ceased, to district wherein indictment was pending.

4. Criminal law ⬅️242(4)—To order removal to another district, court need only find indictment not clearly bad.

Whether court, to which indictment was returned, may hold allegations thereof insufficient, is not for court of another district to decide, on habeas corpus to prevent removal of defendant to district in which indictment is pending; it being sufficient, from latter court's standpoint, to find existence of indictment not so imperfect as to make it clearly apparent that former court must hold it bad.

5. Criminal law ⬅️242(7)—One sought to be removed to answer indictment for using mails to defraud held entitled to opportunity to show noncomplicity in scheme before cessation of his connection with subject-matter (Cr. Code, § 215 [18 USCA § 338]).

One sought to be removed to another district to answer indictment pending against him and others for using mails to defraud, in violation of Criminal Code, § 215 (18 USCA § 338), held entitled to opportunity to show, on application for warrant of removal or for writ of habeas corpus, not only that his connection with whole subject-matter ceased before steps specifically described as constituting fraudulent scheme took place, but that he was wholly free from prior complicity in any aspect thereof, before being removed.

6. Criminal law ⬅️242(7)—Defendant should be removed to another district, if want of probable cause is put in substantial doubt by proofs in addition to indictment.

Where there is affirmative proof, unchallenged except by indictment, that defendant is

not guilty, his removal from district of his residence to that in which indictment is pending should be denied, but, if conclusion of no probable cause is put in any substantial doubt by proofs in addition to indictment, removal should be made.

**7. Criminal law ⬦242(7)—Proceeding for removal to another district is not trial, and proof supplementing indictment may be made by any reasonable method.**

Proceeding for removal to another district to answer indictment pending therein is not a trial in any constitutional sense, and proof supplementing the indictment may be made by any reasonable method.

**8. Habeas corpus ⬦53—Habeas corpus petition held sufficient to entitle petitioner, sought to be removed to another district, to show absence of connection with alleged scheme to defraud (Cr. Code, § 215 [18 USCA § 338]).**

Petition for writ of habeas corpus, alleging that indictment, pending against petitioner in district to which he was sought to be removed, described scheme to defraud by use of mails in violation of Criminal Code, § 215 (18 USCA § 338), characterized by elements not existing until after his active connection with whole subject-matter ceased, that only letter signed by him was not in execution of such scheme, and that he had no interest in company signing another letter, nor any connection with any fraudulent scheme in aid of which other letters not signed by him personally were alleged to have been sent by "defendants," sufficiently presented theory of utter absence of any connection with such scheme, so as to entitle him to opportunity to make such showing before removal.

Moorman, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Middle District of Tennessee; John J. Gore, Judge.

Application by Charles E. Jeffries for a writ of habeas corpus to R. Q. Lillard, United States Marshal. From an order dismissing the writ and remanding the applicant to the marshal for removal to another district, the applicant appeals. Reversed and remanded.

F. M. Bass, of Nashville, Tenn. (Bass, Berry & Sims, of Nashville, Tenn., on the brief), for appellant.

Milton Davenport, Asst. U. S. Atty., of Nashville, Tenn. (A. V. McLane, U. S. Atty., of Nashville, Tenn., on the brief), for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

DENISON, Circuit Judge. This is an appeal from the action of the District Judge in dismissing appellant's writ of habeas corpus and remanding him to the marshal for removal to the Southern district of California, to answer an indictment there pending. Upon the hearing, either for the order for removal or on the habeas corpus petition, no evidence of probable cause was produced in addition to the certified copy of the indictment. The allegations of Jeffries in his petition for habeas corpus were by the court below interpreted to be merely denials of guilt, and accordingly he was not allowed to offer proofs in support.

[1] In Hawkins v. U. S., 5 F.(2d) 564, and Meehan v. U. S., 11 F.(2d) 847, we have recently considered and applied the controlling rules in such a situation. The only open question here is as to their application to the peculiar and seemingly unique circumstances of this case. While we cannot examine the indictment from the standpoint which the court to which it is returned would have, when considering a demurrer or motion against it, yet before it can have effect as showing probable cause for removal we must find in it a substantial charge, intelligibly stated, against the particular respondent whose removal is sought.

[2] This indictment is so involved and includes so much of allegations of overt acts and of evidence, that it requires study and analysis to be reasonably sure what the offense is which is intended to be charged. It relates to the using of the mails in the execution of a scheme to defraud, in violation of section 215 of the Criminal Code, being section 338, title 18, U. S. C.; and appellant, Charles Jeffries, is one of nine defendants. It is based upon the operations of the Jeffries Automatic Service Company for the period from April, 1924, to August, 1925, and says that this company was, from April, 1924, to December 26, 1924, a partnership composed of Elmer B. Jeffries and Charles Jeffries; that from December 26, 1924, to January 29, 1925, Elmer Jeffries was the sole owner; that from January 29 until May 6, 1925, three others were the "owners and promoters of said company," an unincorporated association, while Elmer Jeffries "retained a royalty interest therein"; that after May 6, 1925, the company was a duly organized corporation in which all the defendants, except Charles, were either officers or stockholders (save Daly, who is not otherwise described). There are 15 counts in the indictment, each depending upon the mailing of a particular letter, on dates between August, 1924, and May, 1925. While the indictment is not explicit on the point, and though it uses the broad term "defendants"

with reference to the mailing of each letter, yet we think it should reasonably be inter-preted as not intending to charge any connection by Charles with the execution of the scheme after December 26, or any participation by him in mailing letters of a later date. It plainly implies that his active connection ceased at that date, and if his prior connection had been such as to carry responsibility for the later letters, it should have been explicitly so averred. As to all counts except-ing 1, 2, 3, 5, and 6, we think the indictment charges no offense against Charles. These five counts allege the mailing of letters be-fore the date of December 26, and they must be further considered.

[3] While the indictment in general terms charges that the scheme existed continuously after April, 1924, yet all the various steps in the plan which are specifically described as constituting the scheme took place after De-cember, leaving only general statements ap-plicable to an earlier date. Interpreted by common experience, the indictment may well refer to a scheme for making large profits which in its early stages, may or may not have been promoted in the good faith belief that it would be successful, but which from time to time developed new methods and ex-pedients of progessively speculative and du-bious character, giving additional inducement and opportunity for dishonest promotion, and which eventually collapsed. The drafts-man of this indictment, after saying that the scheme was to defraud "by means of the false and fraudulent pretenses and represen-tations and promises hereinafter set forth," proceeded with a succession of paragraphs each of which begins, "It was a part of the said scheme that," and the majority of which plainly refer to representations and mis-deeds of a date later than December, and not alleged to have been earlier planned. If the allegations are taken literally, as describing only one scheme having all these parts, it could not have come into existence until the date of the latest part; but we need not either affirm or deny the right of the indict-ment court to hold that large parts of the in-dictment may be rejected as surplusage, to dismiss the case as against some of the re-spondents so that as to the remainder there shall be no misjoinder, and to proceed against Charles and those associated with him before he left the company and try them upon the basis of letters mailed before December 26, in the execution of any scheme fairly described in the indictment as in exist-ence before that date; nor can we foretell the action of that court upon that subject-mat-ter.

Searching the whole indictment, after such supposed rejection, to find something which the indictment court may, or may not, regard as such charges made against the de-fendants jointly, and therefore including Charles, we observe two groups of more or less connected fraudulent representations which the draftsman may have intended to describe. One is that it was the intention not to make to the lessees of the machines true statements of the earnings of their re-spective machines and to pay to them the true amounts earned by each, but was rather the intention to make statements of greater amounts than had been earned and to pay greater amounts and to give publicity to such erroneous statements and payments to particular lessees, to the end that the value of leases would be fraudulently exaggerated and the defendants could thereby induce oth-ers to buy similar leases. The second is that the Service Company could make money out of its part of the plan of operation, whereby it would have profits from which it could pay the agreed royalties to the lessees, while, in fact, the defendants either understood or must have known that the company could make no profits out of carrying on its part of the continuing operations, but would use up and exhaust its capital and other earnings in early payments to the first lessees, where-by the plan would collapse and the promised royalties would go unpaid.

[4] In assuming that the indictment court may conclude that the indictment sufficiently charges the bad faith of the defendants in making these two groups of promises and representations at the time they were made—that is to say, the intent, express or im-plied, that the promises would not be carried out—we do not intimate that such court may not rightly hold some or all of these allega-tions insufficient in this respect; that is not for us to decide, but from the standpoint which we occupy, it is sufficient to find that there is an indictment which is not so imper-fect as to make it clearly apparent that the indictment court must hold it bad.

[5] We conclude, therefore, that these five counts, while they are unchallenged, indicate probable cause for removal; but that is not the end of the matter. We held in the Mee-han Case, supra, that where there were a large number of defendants and only gener-al allegations as to all of them, and the in-dictment on its face showed that particular defendants would not be guilty unless specifi-

cally connected with the scheme, the mere fact of the indictment was not conclusive as showing probable cause, but that such a defendant had the right to show, if he could, that there was no substantial, good faith claim that he was so connected, and we think this a case for the application of that principle. If, for example, Charles could make it appear, upon the application for a warrant of removal, or in a proper case upon the habeas corpus hearing, not only that, in accordance with our interpretation of the indictment, his connection with the whole subject-matter ceased on December 26, but that prior to that date he was wholly free from complicity in any aspect of the scheme to defraud which we see can be thought to be well alleged as existing before his separation from the company, he should have an opportunity to make his showing before being removed from the district of his residence.

[6, 7] If, by his showing, including his cross-examination, or if by any showing made by the government, it appeared that there was nevertheless anything fairly tending to show guilt, the commissioner or judge would not try that issue but must remove. As it was expressed in the Meehan Case (page 849): "Wherever there is affirmative proof, unchallenged except by the indictment, demonstrating lack of guilt, removal should be denied; if the conclusion of no probable cause is put in any substantial doubt by proofs in addition to the indictment, the removal should be made." Obviously, the proceeding is not a trial in any constitutional sense, and the proof supplementing the indictment may be by any reasonable method.

[8] We think the petition for habeas corpus sufficiently presents that theory of utter absence of any connection by Charles with any scheme which may have existed among the defendants generally, which theory he had a right to present in opposition to the removal. The petition was drawn in reliance on the view that the indictment described a scheme characterized by elements which did not come into existence until after December; it is not so completely appropriate to the separable scheme of earlier date which we think the indictment court may (or may not) evolve from the mass of allegations. As to the one letter among the five (counts 1, 2, 3, 5, and 6) which was signed by Charles, he says that if produced, it would appear not to be in execution of any such scheme; as to the letter signed by the Kellogg Company, he says that company was composed of three other defendants and he had no voice or interest in it; as to the other four letters, no one of which purports to be signed by him personally, or is charged against him except by the allegation that "defendants" (nine in number) sent or caused to be sent, we are inclined to think his present petition entitles him to establish, if he can do it to a demonstration, that he had no connection with, or responsibility for, any fraudulent scheme which these letters might have intended to aid. If we are wrong in this impression, the court below would doubtless permit him to amend his petition, if he cares to do so, after the critical point has been now clarified.

Because appellant did not have the opportunity to make this showing, the order below is reversed, and the matter remanded for appropriate proceedings. No costs in this court will be awarded.

MOORMAN, Circuit Judge (dissenting). Habeas corpus was sought on the sole ground that the petitioner was denied an opportunity to introduce evidence in support of his plea opposing removal. I am willing to assume that he could and would have introduced evidence supporting every denial and every allegation of fact stated in that plea, and still I think that would not have been enough. The indictment charged him with committing five offenses, I think more than that, but five according to the majority opinion—those set out in counts 1, 2, 3, 5, and 6. When introduced in evidence it made out a prima facie case for removal as to each of those offenses. Jeffries had the right, of course, to overcome this prima facie case if he could, that is the right to introduce evidence in support of his written plea, but nothing more. That plea contained motions for bills of particulars as to certain allegations in the indictment, a denial of other allegations, and the reiterated affirmative defense that on December 26, 1924, the petitioner had parted with his interest in the Jeffries Service Company.

A denial by Jeffries under oath that he was guilty of the offenses charged, and the fact, if it is a fact, that he disposed of his interest in the service company on December 26, 1924 (which is all that his plea amounted to), would not, it seems to me, have overcome the case made out by the indictment. For that matter, the offenses charged in counts 1, 2, 3, 5, and 6 were alleged to have been committed prior to December 26th. As to offenses alleged to have been committed after that date, proof of the disposal

of his interest in the company at that time would not have shown that he did not, as alleged in the indictment, join the other defendants in devising a scheme, a completed scheme, prior to that date, which contemplated the doing of some things before and others after December 26th to carry it out, or that in carrying it out he or one of his associates did not cause the later letters to be mailed to some person or persons intended to be defrauded. If he had alleged that he was not the Charles Jeffries referred to in the indictment, or that his name appeared therein through mistake, or had alleged some special circumstance or fact showing that he could not have participated in the scheme or caused the letters to be mailed, the case made out by the indictment could have been overcome. But he made no such allegation, and in my opinion what he did allege was not sufficient, especially as to the count based on a letter which he had signed. This, I think, is in accord with the Hawkins and Meehan Cases.